```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

JAMIE ALLYN HUGHES,                  *

        Plaintiff,                   *

vs.                                  *
                                          CASE NO. 4:22-CV-165 (CDL)
UNITED STATES OF AMERICA,            *

        Defendant.                   *
```

## O R D E R

    This is a medical malpractice case.  After Jamie Allyn Hughes had surgery on her shoulder, she received post-operative physical therapy at Martin Army Community Hospital.  Hughes alleges that her physical therapist, Nicole Gaylor, improperly applied a hot pack to her shoulder during a physical therapy session.  Hughes did not exhibit any adverse symptoms while the hot pack was on her shoulder, but her shoulder was red and felt warm about fifteen minutes after the hot pack was removed.  A few hours later, Hughes noticed that her shoulder looked like a blister was forming. Hughes had a preexisting medical appointment that afternoon; she showed her shoulder to the doctor, who prescribed burn cream.  That evening, Hughes developed a blister.  Two days later, she went back to Martin Army and told Gaylor that she had been burned, and then she sought treatment from her primary care physician.  Other than the hot pack therapy, Hughes did not use anything hot and did

not have an accident that affected her shoulder.  Hughes was later diagnosed with a full-thickness burn and had to undergo a skin graft.

Hughes contends that her injuries resulted from Gaylor's improper use of the hot pack.  She brought this action against the United States pursuant to the Federal Tort Claims Act because Hughes alleges that Gaylor caused her injuries while acting as an agent of the United States.  Hughes intends to rely on the expert opinions of Richard Clark, a physical therapist who holds a doctorate in orthopedic physical therapy.  Clark opines that Gaylor breached the standard of care in her treatment of Hughes and that Gaylor's actions resulted in Hughes's injuries.  The Government filed a motion to exclude all of Clark's expert opinions.  As discussed below, the motion (ECF No. 16) is denied.

DISCUSSION

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that" the expert has "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue," the expert's opinion "is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and the "opinion reflects a reliable application of the

principles and methods to the facts of the case." Fed. R. Evid. 702.   In evaluating the admissibility of expert testimony, the Court acts a gatekeeper to ensure that scientific evidence is relevant and reliable.   Of course, in a Federal Tort Claims Act case like this one, where the judge will serve as factfinder instead of a jury, there is less concern about "dumping a barrage of questionable scientific evidence on a jury"—and thus "less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."   *In re Teltronics, Inc.*, 904 F.3d 1303, 1312 (11th Cir. 2018) (quoting *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005)).[1]

The Court still must consider whether "the expert is qualified to testify competently regarding the matters he intends to address," whether his methodology "is sufficiently reliable," and whether his testimony will help the trier of fact "to understand the evidence or to determine a fact in issue."   *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).   The Court's goal is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

---

[1] Under 28 U.S.C. § 2402, "any action against the United States under section 1346 shall be tried by the court without a jury."

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The testimony must be "properly grounded, well-reasoned, and not speculative." *Id.* at 1262 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments)

Clark opines that Gaylor breached the standard of care for physical therapists by applying the hot pack for too long and failing to use adequate barrier layers between the hot pack and Hughes's skin.[2]  Clark further opines that Gaylor's actions resulted in the third degree burn to Hughes's shoulder.  The Government does not appear to dispute that Clark is qualified to offer an opinion on the standard of care for physical therapists. Clark is a licensed physical therapist who holds a doctorate in orthopedic physical therapy, has been treating physical therapy patients for more than twenty years, and is a professor of physical therapy who teaches doctoral level physical therapy courses at Tennessee State University.  He is qualified to render an expert opinion on the standard of care for physical therapists.

---

[2] Clark also opined in his initial report that the hot pack was too hot. The Government asserts that Clark could not determine the temperature of the hot pack based on the evidence, and Hughes did not respond to this argument or point to evidence that Clark has a specific opinion on the temperature of the hot pack.  Thus, it appears that Hughes has abandoned the "too hot" causation argument, and the Court does not intend to admit any testimony from Clark on the precise temperature of the hot pack unless Hughes can point to evidence that Clark has a reliable opinion on this issue.

The Government argues that Clark is not qualified to offer an opinion on causation because he admits that he is not a burn expert.  But Clark does have education, training, and experience as a physical therapist who regularly uses hot packs and other heat therapy, and he has education and training on how such therapies can cause burns if they are not done properly.  The Court is satisfied that Clark is qualified to offer an opinion on the standard of care for physical therapists providing heat therapy and on the consequences if heat therapy is not properly applied.

The Government's next argument is that Clark's opinion is not supported by sufficient facts and data or reliable methodology—and is nothing more than *ipse dixit*.  In reaching his opinion, Clark reviewed Hughes's medical records and the available deposition testimony.  Hughes testified that Gaylor only used two layers of protection for the hot pack, that her shoulder started showing signs of a serious burn shortly after the hot pack was removed, that she did not manipulate or put significant pressure on the hot pack while it was on her shoulder, and that she did not engage in any other activity that would have caused a burn to her shoulder.  Based on the medical records, crediting Hughes's testimony, and noting that the standard of care calls for six to eight layers of protection (not just two), Clark ruled in the hot pack as a cause of Hughes's burn.  And, Clark explained why there are no non-speculative alternative causes to rule out if Hughes's

testimony about what happened is believed.  The Court is satisfied that Clark used a reasonable methodology and relied on sufficient facts and data.[3]

Finally, the Government argues that Clark's opinions would not help the trier of fact because his opinion is essentially *res ipsa loquitur.*  But it is not.  As discussed above, Clark has education and training on how hot packs and heat therapy can cause burns if they are not done properly, he considered the medical records and the deposition testimony to rule in the hot pack as the cause of Hughes's injury and rule out other potential causes, and he concluded that Gaylor breached the standard of care in treating Hughes with the hot pack.  Whether Hughes's injury was caused by negligence, was a non-negligent iatrogenic injury, or was caused by exposure to something other than the hot pack, is a fact question.  Clark's testimony will be helpful to the factfinder in determining these issues, and it is outside the purview of a

---

[3] The Government's "*post hoc ergo propter hoc* fallacy" argument is unpersuasive.  The Court recognizes that a reliable methodology must account for the background risk of an injury without exposure to a product or toxin.  *See, e.g., McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005).  In *McClain*, one plaintiff's injury was a stroke and the other plaintiff's injury was a heart attack.  The Eleventh Circuit noted that there are many causes for strokes and heart attacks without exposure to the defendant's drug, so to prove causation the plaintiff would have to show that the defendant's drug increased the risk "beyond the usual incidence of these common diseases." *Id.* at 1244. In contrast, here, the Government does not argue that third degree skin burns manifest without exposure to heat or chemicals, and Clark explained why he ruled out other potential causes for Hughes's burn.  The Government may test this opinion on cross-examination.

layperson.  The Court declines to exclude it.  The Court hastens to add that nothing in this order should be construed as a decision on the persuasiveness of Clark's testimony or how it should be weighed along with the other evidence.  The Court simply finds that Hughes demonstrated that Clark more likely than not satisfies the requirements of Rule 702.

CONCLUSION

For the reasons set forth above, the Court denies the Government's motion to exclude Clark's expert opinions (ECF No. 16).  With Clark's testimony, the Court expects that the record viewed in the light most favorable to Hughes will reveal genuine fact disputes.  Therefore, the Court will issue a notice of pretrial conference and set this case down for a bench trial.  The Court recognizes that under the amended scheduling order, the dispositive motion deadline is twenty-one days after the date of this order.  A dispositive motion should only be filed if the movant has a good faith belief that (1) no genuine, material fact disputes exist under the correct evidentiary standard and (2) a pre-trial ruling on a dispositive emotion will be a good use of judicial resources and significantly narrow the issues for trial.

IT IS SO ORDERED, this 5th day of February, 2024.

s/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA